**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **STEPHANIE MONESTIME,** | |
| *Plaintiff,* | Case No.: |
| v. | _____ |
| **VERIZON WIRELESS SERVICES, LLC, EQUIFAX INFORMATION SERVICES, LLC, TRANSUNION, LLC,** *and* **EXPERIAN INFORMATION SOLUTIONS, INC.,** | JURY TRIAL DEMANDED |
| *Defendants.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Stephanie Monestime** ("**Ms. Monestime**" or "**Plaintiff**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Verizon Wireless Services, LLC** ("**Verizon**"), **Equifax Information Services, LLC** ("**Equifax**"), **Transunion, LLC** ("**Transunion**"), **Experian Information Solutions, INC.,** ("**Experian**"), (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Ms. Monestime against the Defendants for violations of *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.     Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3.     Defendants are subject to the provisions of the FCRA and are subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and § 48.193, Fla. Stat.

4.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the acts complained of were committed and/or caused by the Defendants within Orlando, Orange County, Florida, which is in the Middle District of Florida.

## PARTIES

5.     **Ms. Monestime** is a natural person residing in the City of Orlando, Orange County, Florida.

6.     Ms. Monestime is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.     **Verizon** is a Delaware limited liability company with a principal business address of One Verizon Way, Basking Ridge, NJ 07920.

8.     Verizon is registered to conduct business as a foreign corporation in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324**.

9.     **Equifax** is a Georgia limited liability company with a principal business address of 1550 Peachtree Street, NW, Atlanta, GA 30309.

10.    Equifax is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

11.    **TransUnion**, is a Delaware limited liability company with a principal business address of 555 West Adams Street, Chicago, IL 60661.

12.    TransUnion is registered to conduct business as a foreign corporation in the State of Florida and its Florida registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

13.    **Experian** is an Ohio corporation with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

14.    Experian is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

15.    Equifax, TransUnion, and Experian are *Consumer Reporting Agencies* ("CRAs") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that they, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and use various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

16.   On or around May 2, 2025, an unknown individual used Ms. Monestime's personal identifying information, including her social security number, to open an unauthorized and fraudulent account with Verizon (the "Account").

17.   Ms. Monestime never authorized nor utilized the services tied to the creation of the fraudulent Account and has exclusively maintained cellular services through another provider (MetroPCS) for years.

18.   The identity thief defaulted on the fraudulent Account, leaving a fraudulent balance of $366.

19.   Verizon placed the Account in collections and reported the Account to Equifax, TransUnion, and Experian. **SEE PLAINTIFF'S EXHIBIT A, B, & C.**

20.   Each of the CRAs published consumer credit reports for Ms. Monestime displaying the derogatory Verizon tradeline. *Id.*

21.   Upon reviewing her credit reports, Ms. Monestime discovered her identity had been compromised.

22.   On February 23, 2026, Ms. Monestime submitted an identity theft report to the City of Orlando Police Department.

23.   On or about March 23, 2026, Ms. Monestime disputed the information Verizon had reported to Experian stating it was the result of identity theft, and providing them with a copy of the official Orlando Police Department Identity Theft Report.

24.     On or about March 24, 2026, Ms. Monestime disputed the information Verizon had reported to TransUnion and Equifax, stating it was the result of identity theft, and providing them with a copy of the official Orlando Police Department Identity Theft Report.

25.     Thus, Ms. Monestime's dispute that the Verizon Account should be blocked was readily, easily, and objectively verifiable considering that Ms. Monestime provided a copy of the Orlando Police Department Identity Theft Report.

26.     Pursuant to 15 U.S.C. § 1681c-2, upon receipt of an official identity theft police report, CRAs are legally required to block the reporting of any information identified by a consumer that resulted from identity theft within four business days.

27.     Furthermore, pursuant to 15 U.S.C. § 1681i, the CRA Defendants were required to conduct a reasonable reinvestigation and promptly delete or modify the inaccurate information.

28.     Despite having more than sufficient information to investigate the disputes themselves, neither Equifax, TransUnion, nor Experian conducted any human-led investigation of Ms. Monestime's disputes at all.

29.     Instead, TransUnion, Equifax, and Experian's automated systems sent Verizon an *Automated Consumer Dispute Verification* ("ACDV") request through a system known as e-OSCAR and asked Verizon to make a reasonable investigation into the dispute pursuant to the FCRA.

30.     When responding to an ACDV through e-OSCAR, the person sending the response must electronically sign to confirm as follows:

[b]y submitting this ACDV, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted.

31.    Verizon responded to the ACDV requests, falsely confirming its tradeline was correct and required no update, modification or deletion.

32.    However, Verizon had no reasonable basis to conclude the Account balance was verified as belonging to Plaintiff.

33.     If a furnisher of data to a CRA, like Verizon, confirms disputed information as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc.* (11th Cir.) 827 F.3d 1295 (2016).

34.    The standard for judging the reasonableness of procedures "is what a reasonably prudent person would do under the circumstances." *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47, 51 (D.C. Cir. 1984).

35.    Verizon completely failed to meet this standard, as it acquired zero evidence to overcome a verified law enforcement identity theft report.

36.    Verizon is a massive telecommunications corporation that receives thousands of credit disputes each month.

37.    On information and belief, to minimize costs, Verizon instructs its employees or contractors responding to ACDVs to quickly compare the information contained in the requesting CRAs file against Verizon's own internal records.

38.     On information and belief, Verizon does not authorize its employees/contractors to make any actual investigation at all, beyond a *de minimis* comparison of CRA records to Verizon's own records.

39.     For this reason, a consumer who disputes something specific about the data being reported – such as it being the result of identity theft – will have her information confirmed as "accurate" simply because Verizon's own flawed records show as much, and, moreover, the employees/contractors answering the disputes are not trained to investigate disputes of this nature nor are they empowered to make such investigations.

40.     No objective, reasonable investigation was made; any reasonable investigation would have determined that the Debt should not have been reported as it was the result of fraud.

41.     Verizon's failures were willful and intentional since they were the result of intentional policies put in place to minimize investigation costs, even though the accuracy of the investigations would be impaired.

42.     On or around April 29, 2026, Ms. Monestime made a subsequent dispute to Experian, reiterating the Verizon Account was the result of identity theft and providing supporting documentation of this.

43.     Around May 4, 2026, Ms. Monestime made a subsequent dispute to Equifax, TransUnion, reiterating the Verizon Account was the result of identity theft and providing supporting documentation of this.

44.    On or around May 8, 2026, TransUnion responded to the dispute stating it had "deleted" the disputed Verizon Account from Ms. Monestime's credit report.

45.    On or around May 13, 2026, Experian responded to the dispute stating it had removed the disputed Experian Account from Ms. Monestime's credit report.

46.    On or around May 14, 2026, Equifax responded to the dispute stating it had removed the disputed Verizon Account from Ms. Monestime's credit report.

47.    The ultimate deletions of the Verizon trade line by CRAs, serve as clear, objective admissions that the account was inaccurate all along and should have been blocked or removed immediately after the initial March 2026 dispute.

48.    Between Ms. Monestime's initial formal disputes in March 2026 and the subsequent deletions in May 2026, Defendants continuously published false, derogatory collection information to third parties, causing actionable credit suppression and severe emotional distress.

**Experian, Equifax, and TransUnion Make Unreasonable Investigation**

49.    Experian, Equifax, and TransUnion have furnished reports about Ms. Monestime to third parties – creditors, or potential creditors – which included the fraudulent Verizon debt improperly reported as a verified collection item.

50.    CRAs are required to conduct their own investigations into a dispute from a consumer. *See* 15 U.S.C. § 1681i(a)(1)(A).

51.    On information and belief, rather than conduct its own independent reinvestigation, Experian, Equifax, and TransUnion, in response to the disputes

received from Ms. Monestime, merely relied on the dispute responses from Verizon, blindly accepting the results and updating their reporting accordingly.

52.    Experian, Equifax, and TransUnion provided dispute results to Ms. Monestime indicating that no changes had been made to her credit file despite her dispute.

53.    Experian, Equifax, and TransUnion determined that the electronic verification of the tradeline by Verizon – something requiring only a few clicks of a computer mouse – was somehow more persuasive evidence than anything proffered by Ms. Monestime, even though Ms. Monestime's disputes and version of events were far more probable than that of Verizon's.

54.    Upon receipt of the ACDV responses, Experian, Equifax, and TransUnion utilized an automated system which made rudimentary checks of tradeline data between what Verizon reported and the data contained in Experian's own file on Ms. Monestime, *e.g.*, her name, address, date of birth, and Social Security number.

55.    Such automated processes will not do anything to correct fraudulent data reported as valid.

56.    For at least the last 40 years, courts in this district have recognized that a CRA cannot rely solely upon its data furnisher when the consumer provides proof questioning the reliability and accuracy of the data furnisher's representations.

57.    The CRA must make some independent investigation of its own. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985)

("Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher].").

58.     Experian, Equifax, and TransUnion were obligated to do more than merely send ACDVs to Verizon to investigate Ms. Monestime's disputes because Ms. Monestime had specifically highlighted the issue in her disputes, especially as the information required to evaluate her disputes was readily and objectively verifiable.

59.     Ms. Monestime suffered from lost time and stress from having to seek counsel in order to rectify the wrongly reported information, after attempting to resolve the problem herself through multiple disputes.

60.     Ms. Monestime suffered significant impairment to her credit and scores and was either denied credit or offered credit on less-favorable terms.

61.     Ms. Monestime has hired the undersigned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## VERIZON'S WILLFUL VIOLATIONS OF THE FCRA, U.S.C. § 1681s-2(b)

62.     Ms. Monestime adopts and incorporates paragraphs 1 – 61 as if fully stated herein.

63.     Verizon violated **15 U.S.C. § 1681s-2(b)** when it failed, on multiple occasions, to conduct a reasonable investigation after notice of dispute from a CRA, as any reasonable investigation would have concluded the Account balance was

completely fraudulent, open via identity theft, and backed by zero authentic client verification records.

64.    Verizon violated **15 U.S.C. § 1681s-2(b)** when it failed to update, modify, or permanently delete its derogatory reporting after receiving notices of dispute, falsely certifying to the CRAs that its trade line was accurate when it was not.

65.    The information Verizon continuously reported and verified was completely inaccurate, and no objective, human-led investigations were actually conducted by Verizon.

66.    Verizon's actions were willful and intentional, or, alternatively, it acted with reckless disregard for its statutory duties under the FCRA to perform reasonable investigations upon receiving consumer fraud disputes.

67.    It was entirely foreseeable that Verizon's automated rubber-stamping policies would cause Ms. Monestime ongoing financial harm and credit suppression.

68.    Verizon's conduct directly caused Ms. Monestime to suffer severe damage to her credit reputation and scores, out-of-pocket expenses, as well as concrete emotional distress.

69.    Accordingly, Verizon is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Monestime's actual damages or statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Monestime respectfully requests this Honorable Court to enter judgment in her favor, and against Verizon, for:

a.  The greater of Ms. Monestime's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## COUNT II
## VERIZON'S NEGLIGENT VIOLATIONS OF THE FCRA,
## 15 U.S.C. § 1681s-2(b)
### Pled in the Alternative to Count I

70.  Ms. Monestime adopts and incorporates paragraphs 1 – 61 as if fully stated herein and pled strictly in the alternative to Count I.

71.  Verizon violated 15 U.S.C. § 1681s-2(b) when it failed to conduct a reasonable investigation after notice of dispute from the CRAs, continuing to furnish false, unverified collection records as belonging to Ms. Monestime.

72.  Verizon received formal notice of a dispute multiple time from the CRAs.

73.  Verizon owed Ms. Monestime a legal duty to conduct a reasonable and thorough investigation upon receiving such dispute notices.

74.  Verizon breached this duty when it failed, multiple times, to conduct a reasonable investigation.

75.  It is reasonably foreseeable that Verizon's actions and policies would cause Ms. Monestime harm.

76.    Verizon's conduct caused Ms. Monestime to suffer damage to her credit report and scores, as well as emotional distress in having to deal with an account being reported which she disputed to no avail.

77.    Verizon acted negligently, and is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Monestime's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Monestime respectfully requests this Honorable Court to enter judgment in her favor, and against Verizon, for:

   a.  Ms. Monestime's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

   b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

   c.  Such other relief that this Court deems just and proper.

## COUNT III
## EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)

78.    Ms. Monestime adopts and incorporates paragraphs 1 – 61 as if fully stated herein.

79.    Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on multiple occasions, to conduct a reasonable reinvestigation into disputes from Ms. Monestime regarding the Account balance, since any reasonable investigation would have concluded that the Account balance was completely fraudulent, open via identity theft, and backed by zero authentic client verification records.

80.     Experian's conduct was a result of its regular policies and procedures, which outsource investigations to its data furnishers.

81.     Experian's conduct was willful and intentional, or, alternately, Experian acted with reckless disregard for its duties under the FCRA to investigate consumer disputes.

82.     Experian is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Monestime's actual damages and statutory damages of up to $1,000 for *each occurrence*, plus punitive damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Monestime respectfully requests this Honorable Court to enter judgment against Experian for:

   a.  The greater of Ms. Monestime's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

   b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

   c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

   d.  Such other relief that this Court deems just and proper.

### COUNT IV
### EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)
### Pled in the Alternative to Count III

83.     Ms. Monestime adopts and incorporates paragraphs 1 – 61 as if fully stated herein and strictly pled in the alternative to Count III.

84.     Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on multiple occasions, to conduct a reasonable reinvestigation into disputes from Ms. Monestime regarding the Debt, since any reasonable investigation would have concluded the Account balance was completely fraudulent, open via identity theft, and backed by zero authentic client verification records.

85.     Experian owed Ms. Monestime a legal duty to conduct reasonable investigations upon receiving notice that Ms. Monestime disputed the Verizon tradeline, on multiple occasions.

86.     Experian breached this duty when it failed, multiple times, to conduct a reasonable investigation.

87.     Experian's conduct was negligent, and Experian is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Monestime's actual damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Monestime respectfully requests this Honorable Court to enter judgment against Experian for:

    a.  Ms. Monestime's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

    c.  Such other relief that this Court deems just and proper.

## COUNT V
## EQUIFAX'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)

88.     Ms. Monestime adopts and incorporates paragraphs 1 – 61 as if fully stated herein.

89.     Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on multiple occasions, to conduct a reasonable reinvestigation into disputes from Ms. Monestime regarding the Account balance, since any reasonable investigation would have concluded that the Account balance was completely fraudulent, open via identity theft, and backed by zero authentic client verification records.

90.     Equifax's conduct was a result of its regular policies and procedures, which outsource investigations to its data furnishers.

91.     Equifax's conduct was willful and intentional, or, alternately, Equifax, and acted with reckless disregard for their duties under the FCRA to investigate consumer disputes.

92.     Equifax is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Monestime's actual damages and statutory damages of up to $1,000 for *each occurrence*, plus punitive damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Monestime respectfully requests this Honorable Court to enter judgment against Equifax for:

a. The greater of Ms. Monestime's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## COUNT VI
## EQUIFAX'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)
### Pled in the Alternative to Count V

93.  Ms. Monestime adopts and incorporates paragraphs 1 – 61 as if fully stated herein and strictly pled in the alternative to Count V.

94.  Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on multiple occasions, to conduct a reasonable reinvestigation into disputes from Ms. Monestime regarding the Account balance since any reasonable investigation would have concluded the Account balance was completely fraudulent, open via identity theft, and backed by zero authentic client verification records.

95.  Equifax owed Ms. Monestime a legal duty to conduct reasonable investigations upon receiving notice that Ms. Monestime disputed the Verizon tradeline, on multiple occasions.

96.  Equifax breached this duty when it failed, multiple times, to conduct a reasonable investigation.

97.  Equifax's conduct was negligent, and Equifax is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Monestime's actual damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Monestime respectfully requests this Honorable Court to enter judgment against Equifax for:

a. Ms. Monestime's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT VII
## TRANSUNION'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)

98. Ms. Monestime adopts and incorporates paragraphs 1 – 61 as if fully stated herein.

99. TransUnion violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on multiple occasions, to conduct a reasonable reinvestigation into disputes from Ms. Monestime regarding the Account balance, since any reasonable investigation would have concluded that the Account balance was completely fraudulent, open via identity theft, and backed by zero authentic client verification records.

100. TransUnion's conduct was a result of its regular policies and procedures, which outsource investigations to its data furnishers.

101. TransUnion's conduct was willful and intentional, or, alternately, TransUnion acted with reckless disregard for its duties under the FCRA to investigate consumer disputes.

102.    TransUnion is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Monestime's actual damages and statutory damages of up to $1,000 for *each occurrence*, plus punitive damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Monestime respectfully requests this Honorable Court to enter judgment against TransUnion for:

   a.  The greater of Ms. Monestime's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

   b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

   c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

   d.  Such other relief that this Court deems just and proper.

**COUNT VIII**
**TRANSUNION'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. §**
**1681i(a)(1)(A)**
**Pled in the Alternative to Count VII**

103.    Ms. Monestime adopts and incorporates paragraphs 1 – 61 as if fully stated herein and strictly pled in the alternative to Count VII.

104.    TransUnion violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on multiple occasions, to conduct a reasonable reinvestigation into disputes from Ms. Monestime regarding the Account balance, since any reasonable investigation would have concluded the Account balance was completely fraudulent, open via identity theft, and backed by zero authentic client verification records.

105. TransUnion owed Ms. Monestime a legal duty to conduct reasonable investigations upon receiving notice that Ms. Monestime disputed the Verizon tradeline, on multiple occasions.

106. TransUnion breached this duty when it failed, multiple times, to conduct a reasonable investigation.

107. TransUnion's conduct was negligent, and TransUnion is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Monestime's actual damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Monestime respectfully requests this Honorable Court to enter judgment against Transunion for:

    a. Ms. Monestime's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

    c. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Monestime hereby demands a jury trial on all issues so triable.

Respectfully submitted on June 1, 2026, by:

**SERAPH LEGAL, P.A.**

/s/ *Christian Cok*
Christian E. Cok, Esq.
Florida Bar No.: 1032167
CCok@seraphlegal.com
3505 E Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-1230 (Ext: 307)
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A.   Ms. Monestime's Equifax Consumer Disclosure, Verizon Tradeline, January 20, 2026 - Excerpt
B.   Ms. Monestime's TransUnion Consumer Disclosure, Verizon Tradeline, January 20, 2026 – Excerpt
C.   Ms. Monestime's Experian Consumer Disclosure, Verizon Tradeline, January 20, 2026 – Excerpt
D.   Equifax's Dispute Results, April 16, 2026 - Excerpt
E.   TransUnion's Dispute Results, April 14, 2026 - Excerpt
F.   Experian Dispute Results, May 5, 2026 - Excerpt